1
2
3
4
5
6
7

8           **IN THE UNITED STATES DISTRICT COURT**

9           **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  JONLYNN S. MONTGOMERY,                    No.  2:21-CV-1826-KJM-DMC-P

12           Plaintiff,

13       v.                                    <u>FINDINGS AND RECOMMENDATIONS</u>

14  GOVERNMENT, et al.,

15           Defendants.

16

17           Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18  42 U.S.C. § 1983.  Pending before the Court is Plaintiff's first amended complaint, ECF No. 11.

19           The Court is required to screen complaints brought by prisoners seeking relief

20  against a governmental entity or officer or employee of a governmental entity.  <u>See</u> 28 U.S.C.

21  § 1915A(a).  This provision also applies if the plaintiff was incarcerated at the time the action was

22  initiated even if the litigant was subsequently released from custody.  <u>See</u> <u>Olivas v. Nevada ex rel.</u>

23  <u>Dep't of Corr.</u>, 856 F.3d 1281, 1282 (9th Cir. 2017).  The Court must dismiss a complaint or

24  portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can

25  be granted; or (3) seeks monetary relief from a defendant who is immune from such relief.  <u>See</u>

26  28 U.S.C. § 1915A(b)(1), (2).  Moreover, the Federal Rules of Civil Procedure require that

27  complaints contain a ". . . short and plain statement of the claim showing that the pleader is

28  entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This means that claims must be stated simply,

1

concisely, and directly.  See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I.  PLAINTIFF'S ALLEGATIONS

This action proceeds on Plaintiff's first amended complaint.  ECF No. 11.  At the time the first amended complaint was filed, Plaintiff was a prisoner at Rio Consumnes Correctional Center.  See id. at 1.  Plaintiff has since been transferred to San Quentin State Prison.  See ECF No. 19 (notice of change of address).  Plaintiff names the following individuals as defendants, all of whom at all times related to this complaint were working at William R. Ridgeway Justice Center: (1) Richard E. Stover, who at all times mentioned in this complaint was working as a probate referee; (2) Judge Dhillon, who at all times mentioned in this complaint was working as a probate judge; (3) James Tucker Fletcher, who at all times mentioned in this complaint was working as a probate referee; and (4) T. Brice, who at all times mentioned in this complaint was working as a court clerk.  See ECF No. 11, pg. 2.  Plaintiff also lists the following entities in the caption of the amended complaint: "William R. Justice Center (Probate)" and "Sacramento Sheriff's Department."  Id. at 1.  These are not named as defendants.  The Court notes the list of named defendants is different from those named in the original complaint addressed in the prior screening order.  Compare ECF Nos. 1, 11.

Plaintiff asserts a violation of his Fourteenth Amendment due process rights and Eighth Amendment rights through cruel and unusual punishment.  Id. at 3-4.  In identifying the issues involved, Plaintiff states: "access to court" and "violation of policy and procedures of court."  Id. at 3.  Montgomery makes a claim, unsupported by specific facts, that he was denied access to the courts, given limited access to the law library, and not given zoom or phone calls to

attend court dates.  He seeks to recover his inheritance and life insurance policy left to him by his father, Robert C. Montgomery Jr., and if funds from the aforementioned sources have been fraudulently taken, or mismanaged, then he seeks to be fully reimbursed and compensated. Id. at 5.

Plaintiff's father allegedly owned a Cigna life insurance policy when he passed away on August 20, 2020.  Id. at 3.  Although Plaintiff was allegedly the sole beneficiary of his father's life insurance policy, he claims he was unable to collect because he was in Sacramento County Jail at the time, and therefore, unable to attend a probate hearing regarding the policy. Id. Plaintiff did allegedly file a petition for probate in order to claim the payout of the life insurance policy and to administer his father's estate, and claims his petition was granted, naming him the executor/administrator of the estate.  Id.

When an alleged court hearing was scheduled with Judge Dhillon at the William R. Ridgeway Justice Center, which Plaintiff was unable to attend due to his incarceration, the Judge supposedly granted a continuance, and a later hearing was to be conducted over the phone with the judge and Plaintiff's mother.  Id.  Although Plaintiff contends he was on time for this later hearing, he states his claim was never heard.  Id.  Plaintiff claims he has repeatedly requested the minute order from the later hearing but did not receive a response and has been informed by the William K. Justice Center there isn't a minute order on file.  Id. at 4.  Plaintiff also contends he was assigned two Probate Referees, the first of which was Defendant Tucker, who allegedly failed to process the DE-160 and DE-161 appraisal of estate forms.  Id. Plaintiff's Probate Referee was changed to Defendant Stover, allegedly, without formally notifying Plaintiff. Id. When Plaintiff sent Defendant Stover the forms to be processed via mail and a family member, Defendant Stover informed Plaintiff he would not process the forms, and that they would be discarded if they were sent again.  Id. Plaintiff also allegedly sent the aforementioned forms to the clerk of the court on three separate occasions, and they were all returned. Id.

///

///

///

## II. DISCUSSION

The Court finds that the first amended complaint does not raise any cognizable claims and further finds that, even if there were cognizable claims asserted, all named defendants are immune.

### A. Fourteenth Amendment Due Process

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or property interest for which the protection is sought.  See Ingraham v. Wright, 430 U.S. 651, 672 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972).  Due process protects against the deprivation of property where there is a legitimate claim of entitlement to the property.  See Bd. of Regents, 408 U.S. at 577.  Protected property interests are created, and their dimensions are defined, by existing rules that stem from an independent source – such as state law – and which secure certain benefits and support claims of entitlement to those benefits.  See id.

Montgomery has a sufficient property interest in the payout of his father's life insurance.  However, the amended complaint does not demonstrate he was denied due process.  "Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  Al Haramain Islamic Foundation, Inc. v. U.S. Dept. of Treasury, 686 F.3d 965, 985 (9th Cir. 2012). Montgomery alleges that his case was never heard on the date of his hearing.  ECF No. 11 at 3.  However, Montgomery was assigned two probate referees to assist him.  Id.  Montgomery was able to send forms to the referees and directly to the clerk of the court.  Id.  The forms were never filed and were returned to Montgomery, though the complaint does not explain why.  Id.  Although Montgomery's forms were rejected, he was given the opportunity to object.  The facts pled here do not reflect a denial of due process.

/ / /

/ / /

/ / /

4

### B. <u>Fourteenth Amendment Equal Protection</u>

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose.  <u>See</u> <u>San Antonio School District v. Rodriguez</u>, 411 U.S. 1 (1972).  Prisoners are protected from invidious discrimination based on race.  <u>See</u> <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974). Racial segregation is unconstitutional within prisons save for the necessities of prison security and discipline.  <u>See</u> <u>Cruz v. Beto</u>, 405 U.S. 319, 321 (1972) (per curiam).  Prisoners are also protected from intentional discrimination on the basis of their religion.  <u>See</u> <u>Freeman v. Arpaio</u>, 125 F.3d 732, 737 (9th Cir. 1997).  Equal protection claims are not necessarily limited to racial and religious discrimination.  <u>See</u> <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 686-67 (9th Cir. 2001) (applying minimal scrutiny to equal protection claim by a disabled plaintiff because the disabled do not constitute a suspect class); <u>see also</u> <u>Tatum v. Pliler</u>, 2007 WL 1720165 (E.D. Cal. 2007) (applying minimal scrutiny to equal protection claim based on denial of in-cell meals where no allegation of race-based discrimination was made); <u>Harrison v. Kernan</u>, 971 F.3d 1069 (9th Cir. 2020) (applying intermediate scrutiny to claim of discrimination on the basis of gender).

In order to state a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that defendants acted with intentional discrimination against plaintiff, or against a class of inmates which included plaintiff, and that such conduct did not relate to a legitimate penological purpose.  <u>See</u> <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class of one"); <u>Reese v. Jefferson Sch. Dist. No. 14J</u>, 208 F.3d 736, 740 (9th Cir. 2000); <u>Barren v. Harrington</u>, 152 F.3d 1193, 1194 (9th Cir. 1998); <u>Federal Deposit Ins. Corp. v. Henderson</u>, 940 F.2d 465, 471 (9th Cir. 1991); <u>Lowe v. City of Monrovia</u>, 775 F.2d 998, 1010 (9th Cir. 1985).

The complaint does not allege that similarly situated individuals were treated differently because of a protected status.  <u>See</u> ECF No. 11.  In fact, based on the allegations, Plaintiff is  not uniquely situated with respect to the life insurance policy and court proceedings related thereto.  Nor has Plaintiff alleged that any defendant acted with a discriminatory intent. There simply is no cognizable equal protection claim stated on the facts presented in the amended

1   complaint.

2   **C. <u>Eighth Amendment</u>**

3         The treatment a prisoner receives in prison and the conditions under which the

4   prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel

5   and unusual punishment.  <u>See</u> <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993); <u>Farmer v. Brennan</u>,

6   511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts

7   of dignity, civilized standards, humanity, and decency." <u>Estelle v. Gamble</u>, 429 U.S. 97, 102

8   (1976).  Conditions of confinement may, however, be harsh and restrictive.  <u>See</u> <u>Rhodes v.</u>

9   <u>Chapman</u>, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with

10  "food, clothing, shelter, sanitation, medical care, and personal safety." <u>Toussaint v. McCarthy</u>,

11  801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when

12  two requirements are met: (1) objectively, the official's act or omission must be so serious such

13  that it results in the denial of the minimal civilized measure of life's necessities; and (2)

14  subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of

15  inflicting harm.  <u>See</u> <u>Farmer</u>, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison

16  official must have a "sufficiently culpable mind."  <u>See</u> <u>id.</u>

17        The complaint alleges that a probate court improperly denied Montgomery the

18  benefit of a life insurance payout while Montgomery was a prisoner at Rio Consumnes

19  Correctional Center.  ECF No. 11 at 3.  The complaint does not allege improper treatment by a

20  prison official; the defendants are all staff at the probate court.  <u>See</u> <u>id.</u> at 1.  The Eighth

21  Amendment scrutinizes "the treatment a prisoner receives in prison and the conditions under

22  which he is confined." <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993).  The Eighth Amendment

23  does not protect prisoners from injustices occurring outside the prison system.  <u>See</u> <u>id.</u>  Because

24  the injustice alleged occurred at a probate court and not Plaintiff's prison system, the Eighth

25  Amendment cannot provide relief.

26  / / /

27  / / /

28  / / /

**D.  Immunity**

Judges are absolutely immune from damage actions for judicial acts taken within the jurisdiction of their courts.  See Schucker v. Rockwood, 846 F.2d 1202, 1204 (9th Cir. 1988) (per curiam).  This immunity is lost only when the judge acts in the clear absence of all jurisdiction or performs an act that is not judicial in nature.  See id.  Judges retain their immunity even when they are accused of acting maliciously or corruptly, see Mireles v. Waco, 502 U.S. 9, 11 (1991) (per curiam); Stump v. Sparkman, 435 U.S. 349, 356-57 (1978), and when they are accused of acting in error, see Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999). This immunity extends to the actions of court personnel when they act as "an integral part of the judicial process."  See Mullis v. U.S. Bankruptcy Court, 828 F.2d 1385, 1390 (9th Cir. 1987).

Defendant Judge Dhillon was a judge acting within the jurisdiction of their court, and Defendant T. Brice was working as a clerk of the court.  ECF No. 11 at 2.  A clerk is an "integral part of the judicial process" and has absolute quasi-judicial immunity.  Sharma v. Stevas, 790 F.2d 1486, 1486 (9th Cir. 1986).  The remaining two defendants were referees.  ECF No. 11 at 2.  Referees are also integral and enjoy absolute quasi-judicial immunity because they are an integral part of the judicial process.  Miller v. Reddlin, 293 F. Supp 216, 234 (C.D. Cal. 1968).  Claims may not be brought against any of the named defendants.

**E.  Access to Courts**

To the extent Montgomery brings other claims for limited access to the courts, such a claim fails.

Prisoners have a First Amendment right of access to the courts.  See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Jones v. Williams, 791 F.3d 1023, 1035 (9th Cir. 2015); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995).  Prison officials must "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  Bounds, 430 U.S. at 828; Silva v. Di Vittorio, 658 F.3d 1090, 1103 (9th Cir. 2011) (overruled on other grounds as stated by Richey v. Dahne, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015).  But the right does not require a particular methodology.  See Lewis, 518 U.S. at 356.  It

guarantees the "capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Id. It does not promise to turn inmates into effective litigators. See id. at 354-55; Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009). The right of access secures the ability to present non-frivolous claims to the court, it does not secure a right to discover claims or litigate them effectively once filed. See Lewis, 518 U.S. at 354-55; Phillips, 477 F.3d at 655. The tools required are those that inmates need to attack their sentences or challenge conditions of confinement. See Lewis, 518 U.S. at 355; Phillips, 477 F.3d at 655. "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis, 518 U.S. at 355; see Phillips, 477 F.3d at 655. The right is restricted to non-frivolous criminal appeals, civil rights actions under 42 U.S.C. § 1983, and habeas corpus petitions. Lewis, 518 U.S. at 353 n.3, 354-56.

The United States Supreme Court has identified two categories of access-to-court claims. Christopher v. Harbury, 536 U.S. 403, 412-13 (2002). The first category includes "forward-looking" claims, which allege that official action presently frustrates a plaintiff's ability to prepare and file a suit. Id. at 413. The second category, "backward-looking" claims, allege that due to official action, a specific case "cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." Id. at 413-14. These cases look "backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." Id. at 414.

To establish an access to the court violation, a prisoner must identify an actual injury. Lewis, 518 U.S. at 349-351; Nev. Dep't of Corrs. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011); Urmancheev v. Anglea, No.:1:19-cv-00791-DAD-JLT (PC), 2020 WL 1904818, at *2 (E.D. Cal. Apr. 17, 2020). An actual injury is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Lewis, 518 U.S. at 349; Urmancheev, 2019 WL 1904818, at *2. An actual injury is a jurisdictional requirement and may not be waived. See Lewis, 518 U.S. at 348-52; Urmancheev, 2019 WL 1904818, at *2. And in the backward-looking context more specifically, a plaintiff must identify: (1) loss of a "nonfrivolous," "arguable" underlying claim; (2) the official acts that frustrated the

8

1  litigation of the underlying claim; and (3) a remedy that "may be awarded as recompense but [is]

2  not otherwise available in some suit that may yet be brought." Harbury, 536 U.S. at 414-18;

3  Urmancheev, 2019 WL 1904818, at *2; Kabede v. Brown, No. 2:16-cv-1765 DB (P), 2017 WL

4  714300, at *6 (E.D. Cal. Feb. 22, 2017).

5          Here, Plaintiff cannot identify an actual injury to support a claim of denial of

6  access to the courts.  In particular, Plaintiff's claim relates to probate proceedings and not a

7  criminal appeal, civil rights action, or habeas corpus proceeding.

8

9                          **III.  CONCLUSION**

10         Because it does not appear possible that the deficiencies identified herein can be

11 cured by amending the complaint, Plaintiff is not entitled to leave to amend prior to dismissal of

12 the entire action.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).

13         Based on the foregoing, the undersigned recommends that this action be dismissed

14 for failure to state a claim against immune defendants.

15         These findings and recommendations are submitted to the United States District

16 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

17 after being served with these findings and recommendations, any party may file written

18 objections with the court.  Responses to objections shall be filed within 14 days after service of

19 objections.  Failure to file objections within the specified time may waive the right to appeal.  See

20 Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

21

22 Dated:  August 7, 2023

23                                    _____

24                                    DENNIS M. COTA
                                     UNITED STATES MAGISTRATE JUDGE
25

26

27

28

                                           9